UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DENNIS SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:24-CV-267 SRW |
| | ) |
| CARAVAN LOGISTICS, INC., et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant Caravan Logistics, Inc.'s Motion for Summary Judgment (ECF No. 46) and Defendants Pei Zhao and Caravan Logistics, Inc.'s Motion for Partial Summary Judgment (ECF No. 49). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). The Court will grant these motions in part and deny them in part.

**I.    BACKGROUND**

On November 12, 2022, Plaintiff was driving on Interstate 55 in the City of St. Louis when his vehicle was struck from behind by a tractor-trailer driven by Defendant Pei Zhao and owned by Defendant Caravan. In February 2024, Plaintiff filed suit in the Circuit Court of the City of St. Louis alleging Defendants were negligent. Defendants removed the matter to this Court. After conducting some discovery, in November 2024, Plaintiff filed an amended complaint asserting claims for (1) negligence and negligence per se against both Defendants; (2) negligent hiring, supervision, and retention against Caravan; and (3) punitive damages against both Defendants.

1

Defendants now seek summary judgment on any claim of negligence per se, the negligent hiring, supervision, and retention claim against Caravan, and punitive damages against either Defendant.

## II.    SUMMARY JUDGMENT STANDARD

Federal Rules of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *Lombardo v. City of St. Louis*, 38 F.4th 684, 689 (8th Cir. 2022). The moving party bears the initial burden of showing both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(a).

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)). Self-serving, conclusory statements without support are insufficient to defeat summary judgment. *Viewpoint Neutrality Now! v. Bd. of Regents of Univ. of Minn.*, 109 F.4th 1033, 1038 (8th Cir. 2024). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The movant is entitled to judgment as a matter of law 'when the plaintiff has failed to make a sufficient

showing of the existence of an essential element of her case.'" *Whitworth v. Kling*, 90 F.4th 1215, 1218 (8th Cir. 2024) (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1074 (8th Cir. 1996)).

### III. UNDISPUTED MATERIAL FACTS

On November 12, 2022, Mr. Zhao operated a tractor-trailer in the course and scope of his work for Caravan. He began his shift near Springfield, Missouri and performed a pre-trip inspection. Before the accident in the City of St. Louis, Mr. Zhao had driven on Interstate 55 North through downtown St. Louis more than ten times. As Plaintiff entered Interstate 55, he did not observe any change in road or weather conditions. He testified he did not have any difficulty braking or slowing down until right before the accident. He did not observe any slowed or stopped vehicles on the highway until shortly prior to the accident.

Mr. Zhao did not see any wetness on the road up until the moment of the accident. Dashcam video shows Mr. Zhao's windshield wipers were not on, and there was no precipitation on the windshield for at least two minutes before the collision. Mr. Zhao's vehicle was initially traveling from 59 miles per hour to 66 miles per hour. The speed limit for motorists traveling on Interstate 55 in the area where the accident occurred is 60 m.p.h. When Mr. Zhao observed flashing lights and brake lights ahead, he reduced his speed to 56 m.p.h. Eleven seconds later, he reduced his speed to 53 m.p.h. Three seconds after that, he reduced his speed to 37 m.p.h.

Mr. Zhao experienced a loss of control of his tractor-trailer combination. Initially, Mr. Zhao was able to avoid rear-ending Plaintiff's vehicle, but his tractor-trailer continued to slide forward and hit the side of the highway with the trailer rotating clockwise while traveling northbound. The tractor-trailer combination driven by Mr. Zhao collided with the rear of Plaintiff's vehicle. Plaintiff's airbag did not deploy during the accident. At the time of collision, there was black ice on the roadway at the scene of the accident. Plaintiff first noticed these road

conditions within a few minutes, or "maybe a minute or two," before the accident. Mr. Zhao first noticed the black ice when he lost control of the truck shortly before the accident. Following the accident, Plaintiff saw and heard several other collisions. No citations were issued to Mr. Zhao as a result of the accident. No deaths were reported at the scene of the accident.

Mr. Zhao is a Canadian citizen who immigrated to Canada from China in 2007, becoming a citizen in 2011 or 2012. He began training for his commercial driver's license in Ontario, Canada in 2018. This training included 100-120 hours of classroom and in-vehicle driving training. Mr. Zhao also studied the Federal Motor Carriers Safety Act, and his training included instruction on the differences between Canadian and U.S. transportation laws. He obtained his commercial vehicle driver's license in January 2019.

In April 2021, Mr. Zhao applied for a position with Caravan, who required him to pass separate written and road tests before being permitted to operate a commercial vehicle for them. Caravan also required Mr. Zhao to complete biannual training. Mr. Zhao was involved in only one other accident as a commercial driver which involved striking a deer. He never received a speeding ticket as a commercial motor vehicle driver. He never failed a drug test or medical exam for commercial vehicle driving. Mr. Zhao was qualified to operate his commercial vehicle on the date of the accident.

Plaintiff's sole retained expert is Kevin Johnson, an accident reconstructionist, not an expert on the Federal Motor Carrier Safety regulations. Mr. Johnson did not provide an opinion on how drivers should be trained or how they should respond to specific circumstances under Federal Motor Carrier Safety regulations. He did not offer an opinion on whether Mr. Zhao's actions at the time of the accident complied with those regulations.

## IV. DISCUSSION

In their motions for summary judgment, Defendants seek dismissal of Plaintiff's claims for punitive damages, negligent hiring, training, and supervision, and negligence per se. First, for Plaintiff's punitive damages claim, Defendants argue there is no evidence that Defendants intentionally harmed Plaintiff without just cause or that they acted with a deliberate and flagrant disregard for the safety of others. Second, Defendants argue Plaintiff's claim for negligent hiring, training, and supervision necessarily fails because Defendant Caravan has admitted to liability under *respondeat superior*. Finally, Defendants assert Plaintiff's claims for negligence per se fail because the undisputed facts establish that Mr. Zhao met his standard of care for compliance with federal regulations.

### A. Punitive Damages

In Missouri, "[p]unitive damages are designed to inflict punishment and to serve as an example and a deterrent to similar conduct." *Dugan v. Hyatt Corp.*, 707 S.W.3d 669, 687 (Mo. Ct. App. 2024) (citing *Call v. Heard*, 925 S.W.2d 840, 849 (Mo. 1996) (en banc)). Recovery of punitive damages in Missouri requires a plaintiff to "prove[] by clear and convincing evidence that the defendant intentionally harmed the plaintiff without just cause or acted with deliberate and flagrant disregard for the safety of others." Mo. Rev. Stat. § 510.261.1. This claim must be proven by clear and convincing evidence. *Ingham v. Johnson & Johnson*, 608 S.W.3d 663, 714 (Mo. Ct. App. 2020) (citation omitted). "Clear and convincing evidence is that which tilts the scales in the affirmative when weighed against the evidence in opposition; evidence which clearly convinces the fact finder of the truth of the proposition to be proved." *Dugan*, 707 S.W.3d at 687–88 (cleaned up). When determining whether the issue of punitive damages should be submitted to a jury:

5

> a court must consider "whether the evidence – giving full play to the jury's right to determine credibility, weigh the evidence and draw justifiable inferences of fact – is sufficient to permit a reasonable juror to conclude that the plaintiff established with convincing clarity—that is, that it was highly probable—that the defendant's conduct was outrageous because of evil motive or reckless indifference."

*Id*. at 688 (quoting *Ingham*, 608 S.W.3d at 715).

Plaintiff has not produced clear and convincing evidence to establish Defendants intentionally harmed Plaintiff without just cause or acted with deliberate and flagrant disregard for the safety of others, and there is insufficient evidence in the record from which a reasonable juror could conclude that Plaintiff is entitled to punitive damages.

Both parties submitted statements of fact that allege an accident between Mr. Zhao and Plaintiff occurred. The parties both refer to the dash cam video of Mr. Zhao shortly before and at the time he loses control of the tractor-trailer and crashes. (ECF No. 46, Exhibit B). The video shows a split-screen with a view looking forward in front of the truck, synched with a video of Mr. Zhao driving the truck. The video is approximately four and one-half minutes long. The video shows the date of the accident and the start time of 5:34 a.m. For the first minute and a half, the tractor-trailer is on what appear to be dry roads with no precipitation and little or no other traffic on the highway. As he enters downtown St. Louis, the vehicles ahead begin braking, Mr. Zhao begins to slow down, brake lights appear ahead of him, and he slows down even more. However, he loses control of the tractor-trailer and jackknifes into the side of the highway with the trailer rotating clockwise forward. Mr. Zhao remains in the truck for the remainder of the video, and his trailer is struck hard by another vehicle. The video does not clearly show the tractor-trailer striking Plaintiff's vehicle.

Plaintiff argues Mr. Zhao should have reduced his speed because he should have seen there was black ice on the road based on lights illuminating the roadway and the fact that other

6

drivers were slowing their vehicles. Assuming these claims are true, they may constitute negligence but are not clear and convincing evidence of "deliberate and flagrant disregard for the safety of others." Mo. Rev. Stat. § 510.261.1.

Plaintiff cites to *Schultz v. Great Plains Trucking, Inc.*, 707 S.W.3d 570 (Mo. 2025) to support his argument. In *Schultz*, a vehicle crashed into the center median wall of a highway causing another vehicle to crash into it. *Id*. at 574-75. The defendant, driving a tractor-trailer, came around the curve and crashed into the first vehicle killing the passenger. *Id*. The Missouri Supreme Court held there was clear and convincing evidence at trial to support a claim for punitive damages. *Id*. at 579-80. The truck driver in that case was an experienced driver with 17 years of experience. *Id*. He was very familiar with the roadway where the accident occurred because he had driven the route "many, many times" and he had even taken that exact route once a week for six months. *Id*. The defendant knew he could not see through the curve so would need to reduce his speed as he approached the curve. *Id*. The defendant switch from the right lane to the left lane because the other vehicles in the right lane were slowing down. *Id*. at 579. The truck driver was driving 10 m.p.h. over the speed limit with his cruise control engaged. *Id*. The defendant understood that failure to comply with the CDL manual could result in serious injury or death. *Id*. at 580. The plaintiff's expert testified, if he had been driving the speed limit, he would have stopped short of the crash and avoided a second collision. *Id.* at 579. The expert further testified that the defendant's conduct was an incredible deviation from the standard of care. *Id*. at 579-80.

The Missouri Supreme Court held there was sufficient evidence for a jury to award punitive damages given the truck driver's "multiple violations of the Missouri CDL manual combined with his knowledge of the collision area conditions prior to and at the time of the

7

collision and evidence of how a similarly situated professional truck driver could have and should have responded." *Id*. at 580.

Here, the evidence is not as robust as in *Schultz*. There is no evidence Mr. Zhao was driving above the speed limit at the time of the accident and no evidence Mr. Zhao had his cruise control engaged. The present case lacks evidence of how a similarly situated professional truck driver could have and should have responded. Plaintiff cites to his expert's report that drivers have a responsibility to maintain a proper lookout and if Mr. Zhao had done so, he would have noticed the difference in the highway surface and noticed that other drivers had reduced their speeds. However, Plaintiff's expert does not state, at least not in any of the facts presented to the Court, that if Mr. Zhao had maintained a proper lookout, he would have avoided the accident, like the expert in *Schultz* stated.

Instead, this case more closely resembles *James v. Moore*, 2025 WL 506546 (E.D. Mo. Feb. 14, 2025). In *James*, the plaintiff's car was struck on Interstate 55 by a truck during a winter storm. *Id*. at *1. This Court found that punitive damages were not appropriate where the truck driver had reduced his speed from 70 m.p.h. to 45 m.p.h., the collision was more of a sideswipe than a rear-ending, plaintiff was able to swerve and enter a ditch, the investigating officer did not issue any citations, the plaintiff did not report being injured at the time, and the plaintiff first noticed the road being snow covered when he stopped. *Id*. at *3. The Court held that the defendant's conduct may constitute negligence but "it does not constitute clear and convincing evidence of 'deliberate and flagrant disregard for the safety of others.'" *Id*. at *4. "Plaintiff's mere allegations of excessive speed in inclement conditions do not satisfy" Missouri's punitive damages standards. *Id*.

8

*James* is also instructive on the issue of punitive damages against Defendant Caravan. The Court held there was no evidence to support punitive damages against the trucking company because the company provided training to its drivers, the truck driver was familiar with Federal Motor Carrier Safety Administration regulations, and he was qualified to operate his vehicle. *Id*. at *3. The Court stated, "[t]his is not a case in which [the driver] had demonstrated dangerous proclivities in operating his vehicle, or that he had a poor driving record, or any other aggravating circumstances that would put [the company] on notice that it should take action against him." *Id*. at *3. Additionally, the driver in *James* "was well-trained with a Class A license in the State of Missouri since before 2016 and had a spotless driving record with no accidents or speeding tickets." *Id*.

Similarly, the undisputed facts in this case show that Mr. Zhao was qualified to operate his vehicle, Defendant Caravan provided him training, he was familiar with the Federal Motor Carrier Safety Administration regulations, he had not demonstrated dangerous driving behavior in the past, and he had no prior accidents with other vehicles or speeding tickets. Caravan's representative testified that Mr. Zhao had only one "unsatisfactory" mark out of four pages worth of driving test tasks which was backing up. After receiving these test results, Mr. Zhao expressed that he would like more practice backing up, and Caravan provided that practice.

The Court finds that, on this record, no reasonable juror could find by clear and convincing evidence that Mr. Zhao intentionally harmed Plaintiff without just cause or acted with deliberate and flagrant disregard for the safety of others or that Mr. Zhao acted with an evil motive or with reckless disregard for the safety of Plaintiff. *Dugan*, 707 S.W.3d at 687–88; Mo. Rev. Stat. § 510.261.1. On the contrary, the undisputed evidence shows that, upon seeing brake lights ahead of him, Mr. Zhao slowed his vehicle in an attempt to avoid colliding with Plaintiff.

Plaintiff has simply not come forth with admissible evidence refuting this testimony or otherwise indicating that Mr. Zhao had ignored warnings that would have made him aware that an accident was inevitable. While the accident still occurred, calling into question whether Mr. Zhao operated his vehicle negligently, Plaintiff has not presented sufficient evidence from which a jury could find by clear and convincing evidence that Mr. Zhao acted with evil motive or deliberate or flagrant disregard for the safety of Plaintiff or others.

Additionally, in support of his claim for punitive damages, Plaintiff also asserts Mr. Zhao did not meet the qualifications of 49 C.F.R. § 391.11(b)(2) which states a driver is qualified to drive if he can read and speak the English language "sufficiently to converse with the general public, to understand highway traffic signs and signals in the English language, to respond to official inquiries, and to make entries on reports and records." Plaintiff cites to *Pugh v. Fang JunQing*, 2018 WL 1406589 (E.D. Mo. Mar. 20, 2018) in support of his argument. However, the Court does not believe its holding is applicable in this case. In *Pugh*, the truck driver did not speak English, he was not qualified to drive a truck in many aspects, and the company that hired him did not require him to complete a road test or complete any of the other requirements as outlined in the regulations. *Id*. at *2. The truck driver rear-ended a car that stopped ahead of him in a construction zone. *Id*. The driver's failure to speak English in *Pugh* was related to the accident because it concerned his ability to read construction signs.

There is no suggestion in this case that Mr. Zhao's English fluency had any bearing on the accident. The issue in this case is if Mr. Zhao drove appropriately in hazardous weather conditions. Mr. Zhao testified he had no problem communicating with law enforcement at the scene of the accident and filled out the incident report in English. He also passed the written and road tests to become a licensed driver and a licensed commercial driver in English. He further

10

testified that he had no problem understanding and communicating at the deposition and that he had worked as a translator before, translating the scientific/academic papers and textbooks. Defendant Caravan representative Paul Merena testified he communicated normally with Mr. Zhao and that Mr. Zhao spoke English. Additionally, the company's hiring and training practices in *Pugh* were significantly more egregious than this case.

For the reasons stated above, the Court will grant summary judgment to Defendants on Plaintiff's claim of punitive damages.

B.     **Negligent Hiring, Training, and Supervision**

Defendant Caravan argues the Court should dismiss Plaintiff's claim against it for negligent hiring, training, and supervision because Defendant Caravan has already admitted to *respondeat superior* liability.

In Missouri,

> Once vicarious liability for negligence is admitted under respondeat superior, the person to whom negligence is imputed becomes strictly liable to the third party for damages attributable to the conduct of the person from whom negligence is imputed. The liability of the employer is fixed by the amount of liability of the employee.

*McHaffie v. Bunch*, 891 S.W.2d 822, 826 (Mo. 1995). Thus, it "is improper to allow a plaintiff to proceed against the employer on any other theory of imputed liability." *Id*. However, the McHaffie court qualified its holding, noting that:

> It may be possible that an employer or entrustor may be held liable on a theory of negligence that does not derive from and is not dependent on the negligence of an entrustee or employee … [I]t is also possible that an employer or an entrustor may be liable for punitive damages [that] would not be assessed against the employee/trustee.

*Id*.

11

This "exception" to the general rule was addressed in the case of *Wilson v. Image Flooring, L.L.C.*, 400 S.W.3d 386, 393 (Mo. Ct. App. 2013) in which, as in this case, plaintiff pleaded a count against a defendant employer for negligent hiring, training and supervision of the employee. The court of appeals held that punitive damages may be sought where "an employer's hiring, training, supervision, or entrustment practices can be characterized as demonstrating complete indifference or a conscious disregard for the safety of others." *Id*. The court explained that "then the plaintiff would be required to present additional evidence [against the employer], above and beyond demonstrating the employee's negligence, to support a claim for punitive damages." *Id*.

Any claim for punitive damages must first be based on evidence supporting the underlying direct liability claim for negligent hiring, training and supervision. Additionally, the claim must be based on clear and convincing evidence that defendant acted either intentionally without just cause, "or acted with a deliberate and flagrant disregard for the safety of others." Mo. Rev. Stat. § 510.261.1.

The Court previously determined that Plaintiff has not submitted clear and convincing evidence that Defendant Caravan acted intentionally without just cause or with deliberate and flagrant disregard for the safety of others. Thus, the *McHaffie* exception does not apply. Because Defendant Caravan has admitted liability under *respondeat superior*, Plaintiff may not proceed against it under a negligent hiring, training, and supervision claim as well. For this reason, the Court will grant summary judgment to Defendant Caravan on this claim.

### C.   Negligence Per Se

In count one of Plaintiff's amended complaint, he asserts a claim for negligence against Defendants. This claim also includes allegations of negligence per se. Plaintiff alleges

Defendants violated FMCS regulations including 49 C.F.R. §§ 392.1(a), 392.2, 392.3, and 392.14. Defendants seek dismissal of Plaintiff's claim of negligence per se on the basis of §§ 392.1, .2, and .3 arguing Plaintiff fails to state a claim. As for the negligence per se claim on basis of § 392.14, Defendants assert the undisputed facts show Mr. Zhao met the standard of care for a commercial driver under that regulation.

To establish a claim for negligence per se, four requirements must be met: "1) a violation of a statute or ordinance; 2) the injured party must be within the class of persons intended to be protected by the statute or ordinance; 3) the injury complained of must be of the nature that the statute or ordinance was designed to prevent; and 4) the violation of the statute or ordinance must be the proximate cause of the injury." *Lowdermilk v. Vescovo Bldg. & Realty Co., Inc.*, 91 S.W.3d 617, 628 (Mo. Ct. App. 2002). "Negligence per se results from the violation of a statute and the jury is instructed on the statutory standard of care instead of the care of a reasonable person." *Cisco v. Mullikin*, 2012 WL 549504 at *2 (E.D. Mo. Feb. 21, 2012) (citing *Lowdermilk*, 91 S.W.3d at 628). "In addition to legislative enactments, courts may adopt the requirements of municipal ordinances and administrative regulations as the standard of conduct necessary to avoid liability for negligence." *Dibrill v. Normandy Assocs., Inc.*, 383 S.W.3d 77, 84 (Mo. Ct. App. 2012) (internal quotations omitted).

The first regulation Plaintiff alleges Defendants violated is 49 C.F.R. § 392.1(a) which states, "Every motor carrier, its officers, agents, representatives, and employees responsible for the management, maintenance, operation, or driving of commercial motor vehicles, or the hiring, supervising, training, assigning, or dispatching of drivers, shall be instructed in and comply with the rules in this part." Next is 49 C.F.R. § 392.2 which states, "Every commercial motor vehicle must be operated in accordance with the laws, ordinances, and regulations of the jurisdiction in

which it is being operated. However, if a regulation of the Federal Motor Carrier Safety Administration imposes a higher standard of care than that law, ordinance or regulation, the Federal Motor Carrier Safety Administration regulation must be complied with."

These regulations cannot form the basis for a negligence per se claim because they fail to set out a statutory standard of care as required to assert a claim of negligence per se. *Cisco*, 2012 WL 549504 at *2 (a statute that does not set out specific conduct that violates the statute cannot be used for negligence per se). In instances in which "a statute "does not indicate specific conduct that constitutes a violation, and does not set out a statutory standard of care," it cannot be the basis of a negligence *per se* claim." *Malcich v. St. Louis Cnty*, 2021 WL 3633703, at *3 (E.D. Mo. Aug. 17, 2021) (quoting *Whittaker v. CRST Malone, Inc.*, 2019 WL 931966, at *1 (E.D. Mo. Feb. 26, 2019)). Therefore, the Court will grant summary judgment in favor of Defendants on those per se negligence claims for violations of 49 C.F.R. §§ 392.1(a) and 392.2 and dismiss those claims.

Third is 49 C.F.R. § 392.3 which states:

> No driver shall operate a commercial motor vehicle, and a motor carrier shall not require or permit a driver to operate a commercial motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate the commercial motor vehicle. However, in a case of grave emergency where the hazard to occupants of the commercial motor vehicle or other users of the highway would be increased by compliance with this section, the driver may continue to operate the commercial motor vehicle to the nearest place at which that hazard is removed.

This regulation does set out a standard of care: the duty of a driver to not operate a commercial motor vehicle while impaired through fatigue, illness, or any other cause. However, Plaintiff does not allege any facts in the amended complaint that establish Mr. Zhao was impaired through

14

fatigue, illness, or any other cause when his tractor-trailer collided with Plaintiff's vehicle. Therefore, Plaintiff fails to state a claim for negligence per se based on this regulation.

The final regulation at issue is 49 C.F.R. § 392.14, which provides:

> Extreme caution in the operation of a commercial motor vehicle shall be exercised when hazardous conditions, such as those caused by snow, ice, sleet, fog, mist, rain, dust, or smoke, adversely affect visibility or traction. Speed shall be reduced when such conditions exist. If conditions become sufficiently dangerous, the operation of the commercial motor vehicle shall be discontinued and shall not be resumed until the commercial motor vehicle can be safely operated. Whenever compliance with the foregoing provisions of this rule increases hazard to passengers, the commercial motor vehicle may be operated to the nearest point at which the safety of passengers is assured.

Regarding this regulation, the undisputed facts establish there were hazardous conditions at the time and location of the accident, i.e. the black ice at the location of the accident. The parties disagree whether Mr. Zhao's actions preceding the accident meet the standard of care of § 392.14. The Court is required to view the evidence in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. The Court finds there are specific disputed facts showing that there are genuine material facts relative to whether Mr. Zhao met the standard of care set by § 392.14, and the jury shall resolve these matters at trial. Therefore, the Court will deny Defendants requests for summary judgment or dismissal of the claim that Mr. Zhao failed to meet the standard of care set by § 392.14.

For these reasons, the Court will grant summary judgment to Defendants on Plaintiff's negligence per se claims for alleged violations of 49 C.F.R. §§ 392.1(a), 392.2, and 392.3. However, the Court will deny summary judgment to Defendants on Plaintiff's negligence per se claims for alleged violations of 49 C.F.R. § 392.14.[1]

---

[1] Both parties refer in their briefing to a negligence per se claim based on 49 C.F.R. § 391.11. However, Plaintiff does not include this regulation in his negligence claim, count one of the amended complaint. Instead, it is included

15

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Caravan Logistics, Inc's Motion for Summary Judgment (ECF No. 46) is **GRANTED** with respect to Count II and Count III.

**IT IS FURTHER ORDERED** that Defendants Pei Zhao and Caravan Logistics, Inc's Motion for Summary Judgment (ECF No. 49) is **GRANTED, in part,** and **DENIED, in part**. Summary judgment is granted with respect to Count I's allegations of negligence per se for alleged violations of 49 C.F.R. §§ 392.1(a), 392.2, and 392.3. Summary judgment is granted with respect to Count III.

**IT IS FURTHER ORDERED** that Summary Judgment is **DENIED** with respect to Count I's allegations of negligence per se for alleged violations of 49 C.F.R. § 392.14.[2]

A separate judgment in accordance with this Memorandum and Order will be entered.

So Ordered this 19th day of September, 2025.

_____
**STEPHEN R. WELBY**
**UNITED STATES MAGISTRATE JUDGE**

---

in count three as support for Plaintiff's claim for punitive damages. As such, the Court does not consider this a separate claim for negligence per se.

[2] Neither Defendant moved for summary judgment for the standard negligence claims alleged in Count I.